**Dale Francis CATCHES, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 78–1174.**

United States Court of Appeals,
Eighth Circuit.

Submitted June 12, 1978.

Decided Aug. 23, 1978.

Marvin D. Truhe (on brief), Lynn, Jackson, Shultz, Ireland & Lebrun, Rapid City, S. D., argued, for appellant.

Jeffrey L. Viken, Asst. U. S. Atty., Sioux Falls, S. D. (argued), David V. Vrooman, U. S. Atty., and Ted L. McBride, Legal Intern, Sioux Falls, S. D., on brief, for appellee.

Before BRIGHT, Circuit Judge, INGRAHAM, Senior Circuit Judge,* and STEPHENSON, Circuit Judge.

---

* The Honorable Joe Ingraham, United States Senior Circuit Judge for the Fifth Circuit, sitting by designation.

1. The Indian Crimes Act of 1976, 18 U.S.C. § 1153 (1976), provides in pertinent part: "Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, murder . . . within the Indian country, shall be subject to the same laws and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States."

2. The Young Adult Offender Act, 18 U.S.C. § 4216 (1976), provides: "In the case of a defendant who has attained his twenty-second birthday but has not attained his twenty-sixth birthday at the time of conviction, if, after taking into consideration the previous record of the defendant as to the delinquency or criminal experience, his social background, capabilities, mental and physical health, and such other factors as may be considered pertinent, the court finds that there are reasonable grounds to believe that the defendant will benefit from

INGRAHAM, Circuit Judge.

This case for post-conviction relief under 28 U.S.C. § 2255 (1970) arose out of the shooting death of an American Indian by an American Indian on the Pine Ridge Indian Reservation near Wanblee, South Dakota. Appellant Dale Francis Catches was convicted by a jury of second degree murder, 18 U.S.C. § 1111 (1970), for the killing of Byron DeSersa, in accordance with the Indian Crimes Act of 1976, 18 U.S.C. § 1153 (1976).[1] The district court, finding that appellant was subject to the Young Adult Offender Act, 18 U.S.C. § 4216 (1976),[2] sentenced him under the Federal Youth Corrections Act, 18 U.S.C. § 5010(b) (1976),[3] to the custody of the Attorney General. Although appellant's court-appointed trial counsel advised him of grounds for a direct appeal, appellant did not seek appellate relief. More than six months after his trial and conviction, however, appellant pro se filed a motion to vacate the sentence pursuant to 28 U.S.C. § 2255 (1970). After conducting an evidentiary hearing, the district court denied the motion for post-conviction relief. We hold that the district court findings are not clearly erroneous and affirm the denial of post-conviction relief.

the treatment provided under the Federal Youth Corrections Act . . . sentence may be imposed pursuant to the provisions of such Act." Appellant was twenty-five years old at the time of his conviction.

3. The Federal Youth Corrections Act, 18 U.S.C. § 5010(b) (1976) provides: "If the court shall find that a convicted person is a youth offender, and the offense is punishable by imprisonment under applicable provisions of law other than this subsection, the court may, in lieu of the penalty of imprisonment otherwise provided by law, sentence the youth offender to the custody of the Attorney General for treatment and supervision pursuant to this chapter until discharged by the [Parole] Commission as provided in section 5017(c) of this chapter." 18 U S.C. § 5017(c) (1976) provides: "A youth offender committed under section 5010(b) of this chapter shall be released conditionally under supervision on or before the expiration of four years from the date of his conviction and shall be discharged unconditionally on or before six years from the date of his conviction."

Mr. Edward Carpenter was appointed by the district court as appellant's trial counsel. Mr. Carpenter had been in private practice for three years. Prior to that time, he had been employed as Assistant United States Attorney for three years and as law clerk to a United States District Judge for two years.

Appellant entered a plea of not guilty and took the stand in his own defense. In the prosecutor's closing argument, an oblique reference was made to appellant's silence at trial up to the moment appellant took the stand. Mr. Carpenter objected to the remark and the court implicitly instructed the jury to disregard the comment. The following exchange occurred:

MR. BOYD: . . . Mr. Carpenter attacks the credibility of the Government witnesses, and you saw most of the people that were involved in this, in both cars, and the circumstances surrounding how those cars came together, and the Government took what it had, and those people came forward. *Yesterday was the first time that Dale Janis* [appellant] *came forward and he decided at that time* and said, "Look, they had gotten in the car—

MR. CARPENTER: I object to that argument. I wish to make a record later.

THE COURT: Pardon?

MR. CARPENTER: I would like to make a record later, if I may.

THE COURT: You may.

MR. BOYD:—*came forth at that time and decided to tell us* —

THE COURT: Are you referring, counsel, that he had an opportunity to come forward sooner than in court?

MR. BOYD: No, sir.

THE COURT: Just so the jury understands.

MR. BOYD: No, sir.

THE COURT: This was his opportunity to testify. He did testify when called upon to testify before this Court. You may proceed.

Record, Vol. VI, at 23–24 (emphasis added).

Over Mr. Carpenter's objection the court gave the following instruction to the jury on lesser included offenses:

The law permits the jury to find the defendant guilty of any lesser offense which is necessarily included in the crime charged in the indictment, whenever such a course is consistent with the facts found by the jury from the evidence in the case, and with the law as given in the instructions of the Court.

So, if the jury should unanimously find the defendant, "not guilty" of the crime charged in the indictment, then the jury must proceed to determine the guilt or innocence of the defendant as to any lesser offense which is necessarily included in the crime charged.

The crime of murder in the second degree, which is charged in the indictment in this case, necessarily includes the lesser offense of (1) voluntary manslaughter, (2) involuntary manslaughter, (3) assault with a dangerous weapon and (4) simple assault.

After appellant's conviction on May 16, 1977, Mr. Carpenter filed a motion for judgment of acquittal or, in the alternative, a motion for a new trial based on the prosecutor's remark and the jury instruction. Both motions were denied.

After sentence was announced, Mr. Carpenter met with appellant at his law office for two hours to discuss the possibility of an appeal.[4] Mr. Carpenter instructed appellant to telephone him within ten days if he wished to appeal. Appellant did not telephone Mr. Carpenter, and, consequently, no appeal was filed.

---

4. Mr. Carpenter's advice was in accord with the American Bar Association's recommendation: "After conviction, the lawyer should explain to the defendant the meaning and consequences of the court's judgment and his right of appeal. The lawyer should give the defendant his professional judgment as to whether there are meritorious grounds for appeal and as to the probable results of an appeal. He should also explain to the defendant the advantages and disadvantages of an appeal. The decision whether to appeal must be the defendant's own choice." ABA Standards, The Defense Function § 8.2 (1971).

On December 13, 1977, appellant pro se filed a motion to vacate the sentence pursuant to 28 U.S.C. § 2255 (1977), urging three grounds for relief. First, appellant·alleged that he had not made an informed decision to waive his right to appeal because Mr. Carpenter had given him misleading or erroneous advice. Although appellant was imprisoned at an adult institution in Oxford, Wisconsin, he claimed that Mr. Carpenter had told him that he would serve his time at a juvenile facility at Englewood, Colorado. Although appellant had served more than six months, he claimed that Mr. Carpenter had told him that he would be released within six months. Although as a matter of law, he could not receive a harsher sentence upon reconviction absent misconduct between trials, appellant claimed that Mr. Carpenter had told him that he would receive a harsher sentence if retried and reconvicted. Second, appellant alleged that a remark in the prosecutor's closing argument violated his Fifth Amendment right to remain silent. Third, appellant alleged that the jury instruction requiring a unanimous jury verdict of not guilty of the greater offense before lesser included offenses could be considered violated his Fifth Amendment right to due process.

Counsel was appointed by the district court to represent appellant in the proceedings for post-conviction relief.

An evidentiary hearing was held by the district court on January 16, 1978.[5] Both Mr. Carpenter and appellant testified, each giving a different version of their conversations.

In a Memorandum Opinion dated January 30, 1978, the district court set forth findings of fact and conclusions of law. The court concluded that appellant had made an informed decision not to appeal, and that Mr. Carpenter did not deprive appellant of his right to appeal by giving misleading or erroneous advice. In support of these con-

clusions, the court made the following findings of fact. (1) Mr. Carpenter told appellant that there were meritorious grounds for appeal. (2) Mr. Carpenter told appellant of his readiness to prosecute an appeal and of appellant's right to new counsel if he so desired. (3) Mr. Carpenter told appellant that the decision of whether to appeal rested with him and that if appellant desired to appeal, he should place a collect telephone call to Mr. Carpenter's office within ten days. (4) Mr. Carpenter and United States Probation Officer Sylvan Hauff discussed with appellant the possible places and duration of confinement but no promises were made. (5) Appellant expressed a desire not to be sentenced to the Englewood, Colorado, juvenile facility for fear that members of the American Indian Movement confined there would endanger him. (6) Mr. Carpenter told appellant that he was uncertain whether the Young Adult Offender Act would apply in the event of a reconviction, since appellant would be older than the age group to which the Act applies by the time of a new trial. (7) Mr. Carpenter told appellant, notwithstanding the uncertainty surrounding application of the Young Adult Offender Act upon a reconviction, that a more severe sentence than the original sentence could not be imposed absent misconduct by appellant between trials.

In a subsequent order, the court stated that the alleged errors in the prosecutor's remark and jury instruction were not cognizable grounds for post-conviction relief.[6]

This appeal of the district court's denial of appellant's motion to vacate sentence is proper, under Fed.R.App.P. 4(b) and 28 U.S.C. §§ 2253, 2255 (1970).

 Appellant's first argument for post-conviction relief is that he did not intelligently waive his right to appeal, because of Mr. Carpenter's ineffective assistance. The standard for effective assistance

---

**5.** The same judge who presided at appellant's trial conducted the evidentiary hearing.

**6.** The district court ruled that "Petitioner's alternative grounds for relief were necessarily dependent upon his establishing the fact that

he received erroneous advice from his counsel." We disagree, because appellant complains of constitutional errors in the prosecutor's remark and jury instruction. *See* note 11 *infra.*

of counsel "is now established as that degree of performance which conforms to the care and skill of a reasonably competent lawyer rendering similar services under the existing circumstances." *Reynolds v. Mabry,* 574 F.2d 978, 979 (8th Cir. 1978). The exercise of reasonable professional judgment, "even when hindsight reveals a mistake in that judgment, does not render a lawyer . . . lacking in competence in rendering his services." *Id.* There is a presumption that counsel has rendered effective assistance. *Thomas v. Wyrick,* 535 F.2d 407, 413 (8th Cir.), *cert. denied,* 429 U.S. 868, 97 S.Ct. 178, 50 L.Ed.2d 148 (1976). To overcome the presumption, appellant "must shoulder a heavy burden." *McQueen v. Swenson,* 498 F.2d 207, 214 (8th Cir. 1974).

Appellant does not complain of Mr. Carpenter's performance at trial but of his advice immediately afterwards.[7] The issue is whether Mr. Carpenter's advice on place and length of confinement and applicability of the Young Adult Offender Act in a new trial were so misleading or incorrect as to violate appellant's right to effective assistance of counsel at the critical period within which an appeal must be perfected. The district court's findings that no promises were made to appellant regarding place or length of confinement are not clearly erroneous. *See Brown v. Swenson,* 487 F.2d 1236, 1240 (8th Cir. 1972), *cert. denied,* 416 U.S. 944, 94 S.Ct. 1952, 40 L.Ed.2d 296 (1974).

The controversy over the advice on the applicability of the Young Adult Offender Act does not concern which words were uttered but the correctness of Mr. Carpenter's interpretation of the law. Mr. Carpenter advised appellant that he was unsure if appellant could be sentenced under the Young Adult Offender Act in the event of a reconviction, since appellant would be older than the age group to which the Act applies. The Fifth Circuit has held that ineffective assistance of counsel is established "[w]hen the facts of record demonstrate that . . . counsel fail[ed] to file notice of appeal due to his 'implied misstatement of the existing facts or the failure to state the true facts when such statement is legally required, to the detriment of the one relying upon such conduct.'" *Arrastia v. United States,* 455 F.2d 736, 740 (5th Cir. 1972). In *Arrastia,* retained counsel advised the defendant that he would be out on parole by the time an appeal could be perfected, when defendant had been convicted of a non-parolable offense. Whereas the advice at issue in *Arrastia* was clearly incorrect, the most that can be said of the advice in the instant case regarding the applicability of the Young Adult Offender Act is that it was equivocal. There is a dearth of authority on the availability of the Young Adult Offender Act in such circumstances.[8]

Mr. Carpenter further advised appellant that he could not receive a harsher sentence upon a new trial absent misconduct between trials. This advice was generally accurate. Where a judge passes sentence upon reconviction, due process requires that a defendant not be punished with a longer sentence for successfully attacking his first conviction. *North Carolina v. Pearce,* 395 U.S. 711, 725, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). A judge may impose a more severe sentence upon reconviction "based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." *Id.* at 726, 89 S.Ct. at 2081. Although Mr. Carpenter could have been more precise, he did not fail to exercise the customary skills and diligence of a reasonably competent attorney under similar circumstances.

---

7. This is not a case where court-appointed counsel failed to inform his client of the right to appeal or failed to carry out his client's express instructions to appeal. *See Blanchard v. Brewer,* 429 F.2d 89 (8th Cir. 1970); *Williams v. United States,* 402 F.2d 548 (8th Cir. 1968). Nor is this a case where counsel failed to inform his client of possible grounds for appeal. *See United States v. Neff,* 525 F.2d 361 (8th Cir. 1975).

8. The Young Adult Offender Act was enacted on March 15, 1976. Litigation over the Act has been sparse.

■ Absent a showing of ineffective assistance of counsel, appellant cannot prevail in his argument that he did not make an informed waiver of his right to appeal. A direct appeal from a criminal conviction by a federal district court to a court of appeals is a fundamental right of due process. *Coppedge v. United States,* 369 U.S. 438, 441, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). A waiver of the right to a direct appeal must be voluntary and informed. *Arrastia v. United States,* 455 F.2d at 739. The test of whether a waiver is an informed one is both subjective and objective: the determination turns "upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1937). A Pandora's box of post-conviction litigation would be opened, if we were to accept appellant's suggestion that the accused's state of mind be the controlling factor. The district court's finding that appellant's waiver was an informed one, based upon the totality of circumstances, is not clearly erroneous.

■ Appellant's second argument for post-conviction relief is that prosecutor's reference in closing argument to appellant's silence up to the moment appellant took the stand violated his Fifth Amendment privilege against self-incrimination. *See Griffin v. California,* 380 U.S. 609, 611, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). The prosecutor said in closing argument: "Yesterday was the first time that Dale Janis [appellant] came forward and he decided at that time

. . . to tell us [his version]." The posture of his case is unusual in that appellant did testify at trial and the prosecutor's remark in issue was made after appellant had testified. A statement is deemed to be an impermissible reference to defendant's silence if either (1) the prosecutor manifestly intended to refer to the defendant's silence, or (2) the jury would "naturally and necessarily" interpret the statement to be a reference to the defendant's silence. *United States v. Sanders,* 547 F.2d 1037, 1042 (8th Cir. 1976).[9] The reference to appellant's silence at trial prior to his testimony was so ambiguous that no intention of the prosecutor was manifest. The statement was very likely inadvertent. *See Samuels v. United States,* 398 F.2d 964, 968 (5th Cir. 1968). Given the ambiguity of the remark, its brevity, and its context—in closing argument after appellant had testified—the jury would not "naturally and necessarily" interpret the statement as a reference to appellant's silence.[10] The prosecutor's remark did not abridge appellant's Fifth Amendment privilege against self-incrimination.

■ Appellant's third argument for post-conviction relief is that the district judge's instruction to the jury on lesser included offenses violated his Fifth Amendment right to due process.[11] The instruction prohibited the jury from considering culpability for lesser included offenses unless the jury unanimously found the appellant not guilty of the greater offense, second degree murder. The charge given is a pattern jury instruction found in 1 E. Devitt & C. Black-

9. Even if the prosecutor's remarks were impermissible, constitutional error would not be reversible, provided that it was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *United States v. Warner,* 428 F.2d 730, 740 (8th Cir.), *cert. denied,* 400 U.S. 930, 91 S.Ct. 194, 27 L.Ed.2d 191 (1970).

10. The district court's instruction was calculated to diminish the possibility that the jury would interpret the remark as a reference to appellant's silence: "This was his opportunity to testify. He did testify when called upon to testify before this Court."

11. As a general rule, "improper jury instructions are not cognizable in a § 2255 proceeding," *Monteer v. Benson,* 574 F.2d 447, 449 (8th Cir. 1978), because a § 2255 proceeding is not a substitute for direct appeal. *Jackson v. United States,* 495 F.2d 349, 351 (8th Cir. 1974). However if an erroneous instruction is of constitutional magnitude or "inherently results in a complete miscarriage of justice," *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962), collateral relief is available. *See Kaufman v. United States,* 394 U.S. 217, 227 n. 8, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969); *Houser v. United States,* 508 F.2d 509, 515–17 (8th Cir. 1974).

mar, Federal Jury Practice and Instructions: Civil and Criminal § 18.05 (3d ed. 1977).

The Second Circuit is the only court of appeals which has expressly ruled on the validity of this instruction.[12] In affirming convictions for tax evasion, the Second Circuit expressly held that an instruction which requires a unanimous verdict of not guilty of a greater offense before the jury may consider a lesser offense is not "wrong as a matter of law." *United States v. Tsanas,* 572 F.2d 340, 346 (2d Cir. 1978).[13]

An alternative instruction permitting the jury to consider the lesser included offense "if after all reasonable efforts it is unable to reach a verdict on the greater" was also upheld. *Id.* Since "the worst that can happen to the Government under the less rigorous instruction is his [defendant's] readier conviction for a lesser rather than a greater crime," and uncertainties in the enforcement of a penal code should be resolved against the harsher punishment, the Second Circuit held that if the defendant seasonably expresses a preference for the alternative instruction, the district court should give that form of instruction. *Id.* We concur in this well-reasoned rule.

Although the refusal to give the less rigorous instruction on lesser included offenses, where timely requested, may be a ground for direct appeal,[14] it is not cognizable in a § 2255 proceeding, because error involved therein is neither of constitutional magnitude nor "inherently results in a complete miscarriage of justice." *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962).

Appellant made an informed waiver of his right to appeal based on the effective assistance of court-appointed trial counsel. The prosecutor's off-hand remark in closing argument about appellant's silence at trial prior to taking the stand was not impermissible under the circumstances. The jury instruction restricting consideration of the lesser offense until such time as the jury unanimously found the appellant not guilty of the greater offense is not cognizable under 28 U.S.C. § 2255 (1970). Accordingly, we affirm the district court's denial of appellant's motion for post-conviction relief.

AFFIRMED.

---

**12.** *See also Fuller v. United States,* 132 U.S. App.D.C. 264, 292, 407 F.2d 1199, 1227 (1967), *cert. denied,* 393 U.S. 1120, 89 S.Ct. 999, 22 L.Ed.2d 125 (1969); *United States v. Butler,* 147 U.S.App.D.C. 270, 455 F.2d 1338 (1972); *O'Clair v. United States,* 470 F.2d 1199 (1st Cir. 1972), *cert. denied,* 412 U.S. 921, 93 S.Ct. 2741, 37 L.Ed.2d 148 (1973); *Gant v. United States,* 506 F.2d 518 (8th Cir. 1974), *cert. denied,* 420 U.S. 1005, 95 S.Ct. 1449, 43 L.Ed.2d 764 (1975).

**13.** "The instruction given here has the merit, from the Government's standpoint, of tending to avoid the danger that the jury will not adequately discharge its duties with respect to the greater offense, and instead will move too quickly to the lesser one. From the defendant's standpoint, it may prevent any conviction at all; a jury unable either to convict or acquit on the greater charge will not be able to reach a lesser charge on which it might have been able to agree. But it entails disadvantages to both sides as well: By insisting on unanimity with respect to acquittal on the greater charge before the jury can move to the lesser, it may prevent the Government from obtaining a conviction on the lesser charge that would otherwise have been forthcoming and thus require the expense of a retrial. It also presents dangers to the defendant. If the jury is heavily for conviction on the greater offense, dissenters favoring the lesser may throw in the sponge rather than cause a mistrial that would leave the defendant with no conviction at all, although the jury might have reached sincere and unanimous agreement with respect to the lesser charge."

572 F.2d at 346 (footnote omitted).

**14.** We intimate no view on the proper disposition of the issue if it were raised on direct appeal of a conviction.