Cedric C. THOMPSON, Appellant,

v.

UNITED STATES, Appellee.

Melvin CROSBY, Appellant,

v.

UNITED STATES, Appellee.

Nos. 8767 and 9178.

District of Columbia Court of Appeals.

Argued Nov. 6, 1975.

Decided April 1, 1976.

---

Thomas William Ullrich, Washington, D. C., appointed by this court, for appellant Thompson.

Eugene M. Bond, Washington, D. C., appointed by this court, for appellant Crosby.

Mark H. Tuohey, III, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry, Stuart M. Gerson, and Peter O. Mueller, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before KELLY, FICKLING and GALLAGHER, Associate Judges.

GALLAGHER, Associate Judge:

Appellants were charged with armed robbery,[1] robbery [2] and assault with a dangerous weapon.[3] Appellant Crosby was found guilty of armed robbery and the next day appellant Thompson was found guilty of robbery.

Both appellants contend the government's case was insufficient to sustain their respective convictions and judgments of acquittal should have been entered.

██ Our review of the record shows there was ample evidence to support their convictions and there were no errors in the

1. D.C.Code 1973, §§ 22–2901, –3202.

2. D.C.Code 1973, § 22–2901.

3. D.C.Code 1973, § 22–502.

denials of their motions for judgments of acquittal.[4]

There is, however, a contention by appellant Thompson that merits discussion. He complains he was denied his right to a fair jury trial because the trial judge coerced the jury to reach a verdict.

After a trial which lasted almost three days, with two codefendants and thirteen witnesses, the jury began its deliberations at approximately 11:45 a. m. on June 4, 1974. At approximately 3:15 p. m. the jury sent a note to the judge stating that they were unable to reach a verdict. The court thereupon gave the *"Winters"* instruction[5] and the jury was sent back to continue its deliberations. A second note was sent to the judge at about 4:30 p. m. asking if the two codefendants could be found guilty of separate offenses. The court then gave the "Multiple Defendants —Multiple Counts" instruction[6] and the jury was again sent back to deliberate. At 5:00 p. m. the jury returned a verdict of guilty of armed robbery on the codefendant Crosby, and was excused for the day.

After further deliberations on the morning of the next day, the jury was brought to the courtroom at approximately 11:40 a. m. and asked if a verdict had been reached on codefendant Thompson. Upon being told by the foreman that it did not appear that the jury was going to be able to reach a verdict the court said:

Well, I think I am going to *send you to lunch and, then, let you deliberate a short time after lunch* to see if you can resolve this matter. (Emphasis added.)

About an hour after lunch, the jury brought in a guilty verdict of robbery on appellant Thompson.

The principal question for us is whether, after having given the *Winters* instruction followed by a subsequent report that the jury was still "hung", in sending the jury back for deliberation still another time the court, in effect, coerced a verdict.

■ We might say, initially, that once a court gives a *Winters* instruction after receiving a report from the jury that it is "hung", it may well be skating on thin ice if the court sends the jury out still another time when again it receives the report that no verdict has been reached after a *reasonable period*[7] of further deliberation. Having said this, we conclude there was no error in the particular circumstances of this case.

■ This was a trial lasting almost three days, with some thirteen witnesses and two codefendants. It appears from the record that this jury was given to rather short deliberation spans before reporting an inability to reach a verdict. The time spent in deliberation in this case was not prolonged, especially at the point the jury first began announcing its inability to

4. Appellant Crosby also contends that the trial court erred in admitting the testimony of Detectives Jones and Brantley in relation to the pretrial identification of appellant. We view this testimony as admissible here (*see Clemons v. United States*, 133 U.S.App. D.C. 27, 39–40, 408 F.2d 1230, 1242–43 (1968) (en banc), *cert. denied*, 394 U.S. 964, 89 S.Ct. 1318, 22 L.Ed.2d 567 (1969)), and, in any event, in the unusual circumstances of this case we see no prejudicial error. Appellant Thompson contends, on his part, that the trial court should have declared a mistrial because of the admission of hearsay evidence by the witness Emmanuel Davis. We find no prejudicial error because of the cautionary instruction given to the jury at

that time. In addition, the subsequent testimony of the then absent witness giving rise to the hearsay objection served further to remove any likelihood of prejudice.

5. *Winters v. United States*, D.C.App., 317 A.2d 530 (1974) (en banc). This is the decision of this court modifying the *Allen* charge.

6. Bar Association Criminal Jury Instructions for the District of Columbia, No. 2.52 (2d ed. 1972).

7. What constitutes a "reasonable period" is a matter ordinarily left to the *sound discretion* of the trial judge.

reach a verdict. In these particular circumstances, we do not consider that in sending the jury out to deliberate further for "a short time after lunch" a coerced verdict resulted.[8]

Accordingly, the judgments of conviction are

*Affirmed.*

David S. Greene, Washington, D. C., was on the brief for appellant.

Michael A. Schuchat, Washington, D. C., was on the brief for appellee.

Before FICKLING and KERN, Associate Judges, and PAIR, Associate Judge, Retired.

---

8. We might say, however, that the *Winters* instruction, like its predecessor *Allen* charge, is not a course to be taken precipitously and automatically when a jury announces an inability to reach a verdict. The trial court should consider first such things as (a) the length of the trial (b) the complexity of the case and (c) the time spent in deliberation at the point the jury announces an inability to reach a verdict. The *Winters* instruction, like the predecessor *Allen* charge, should be in the nature of an ultimate judicial attempt, not a preliminary attempt, to secure a verdict.